IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:09cv292

| | | |
|---|---|---|
| RUTHERFORD COUNTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| GREYROCK COMMUNITY | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | SECOND |
| Vs. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| BOND SAFEGUARD INSURANCE CO., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon defendant's Motion to Dismiss Amended Complaint of Intervenor-Plaintiff (#40). Having carefully considered defendant's motion, intervenor-plaintiff Greyrock Community Association, Inc.'s (hereinafter "the community association") response, and defendant's notice of no-reply, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.      Background

This case involves a failed residential development in Rutherford County

known as *Greyrock at Lake Lure*. Compl., at ¶ 4. In the main action, plaintiff Rutherford County, North Carolina (hereinafter "the county" or "Rutherford County"), seeks to recover on seven Subdivision Bonds, hereinafter the "bonds." Id. Plaintiff is the named obligee or beneficiary under the bonds, defendant is the named surety, and the face value of the bonds is approximately $26,000,000.00. Id.

For the limited purpose of giving the instant motion context, the undersigned takes notice from two previous cases involving the same subdivision that the project failed after defendant herein became the surety, in spite of the fact that 400 lots were sold since defendant undertook the obligation and more than $70,000,000.00 was taken in by the developer. It is undisputed that the development was not completed by LR Buffalo Creek, LLC, hereinafter "the developer," in accordance with the written Performance Guarantee Agreements with the county and that much of the development remains undeveloped, id., including the infrastructure.

Plaintiff alleges that the developers abandoned the project and repudiated their obligations under the Performance Guarantee Agreements before installing the agreed-to improvements, such as roads, and later declared bankruptcy in the Middle District of Florida. Since such abandonment of the project in 2008, plaintiff has made written demand upon defendant to honor its bonds by either completing the development infrastructure or paying to plaintiff the principal amount of the bonds. Id. Plaintiff

alleges that defendant ultimately issued bonds covering Phases I and II of Greyrock in the face amounts of $12,520.460.00 and $13,883,881.00 respectively, but did not bond Phase III of the development. Id., at ¶¶ 13-14. Plaintiff has alleged that each bond was a contract, the developer was the principal, defendant acted as its surety, and plaintiff was the named obligee. Id., at ¶ 15.

Completion of the subdivision improvements was governed by a Performance Guarantee Agreement (hereinafter "development agreement")between plaintiff and the developer, which was last amended March 5, 2008. Id., at ¶ 16. Under the last amended development agreement, the developer had until June 30, 2008, to complete the infrastructure improvements, id., at ¶ 17, and defendant issued Verification Certificates providing that "[w]e consent to the above extension of the agreement secured by this bond to January 2, 2009." Id., at ¶ 19. In pertinent part, the March 5, 2008, agreement provided as follows:

> [t]hat in the event that these deadlines are missed, then the Rutherford County Board of Commissioners shall have the option, in its sole discretion, to call the surety bonds for all sections for which construction is not completed regardless of whether the deadline has passed for that particular section.

Id., at ¶ 20.

Plaintiff then alleges that the developer defaulted when it failed to complete the promised improvements by June 30, 2008. Id., at ¶ 21. The following month, the

developer shut down operations, and in August 2008 plaintiff sent a letter to the developer notifying it of its default under the March 5, 2008, agreement. Id., at ¶¶ 22-23.

In September 2008, the plaintiff, through resolution of its Board of Commissioners, called all the bonds issued by defendant in accordance with the March 5, 2008, agreement, id., at ¶ 24, and thereinafter sent a demand letter to defendant dated September 4, 2008, which was accompanied by a copy of the resolution. On September 25, 2008, defendant acknowledged receipt of the demand, but requested that plaintiff delay taking action for up to five months. Id., at ¶ 26. On October 30, 2008, the developer filed for Chapter 11 bankruptcy protection in the Middle District of Florida. Plaintiff alleges that despite such demand, defendant has failed to complete the improvements or pay the face amount of the bonds. Id., at ¶ 28. Further, plaintiff alleges that defendant has not begun to complete the subdivision infrastructure improvements. Id., at ¶ 28 & 31.

In addition to the allegations of the Complaint, the court has also taken judicial notice of other actions filed in this court that are related to the failed Greyrock development. Soon after defendant received plaintiff's demand letter, but before it responded to defendant and sought an extension, defendant caused to be filed in this court a Complaint on September 12, 2008. In that action, Bond Safeguard Insurance

Company v. LR Buffalo Creek, LLC, 1:08-cv-00434 (W.D.N.C. 2008), defendant herein sought indemnification on the obligations it had not yet paid to plaintiff herein from multiple parties, including the developer. It acknowledged therein that it had issued the bonds, the developer's failure to complete the infrastructure, and the demand of plaintiff herein. In that indemnification action, defendant sought to recover all amounts necessary to exonerate it from all claims under these bonds. Further, it estimated that the cost to complete the infrastructure was more than $20,000,000.00, and that it had set aside a reserve in connection with its obligations under the bonds.[1]

The court also takes judicial notice of its decision in Allen et al. v. Land Resource Group of North Carolina, LLC et al., 1:09cv196 (WDNC), where this court remanded certain claims of lot owners back to the North Carolina Business Court and transferred other claims to the bankruptcy court for the Middle District of Florida. As briefly discussed above, on October 30, 2008, the developer, its parent company, and numerous affiliates, filed Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Middle District of Florida. The developer's bankruptcy case was jointly administered with the other cases under the caption In re Land Resource, LLC, 08-10159-Br (M.D.Fla.). The developer acknowledged in pleadings filed in the bankruptcy court that it was unable to complete development of the Grey Rock

---

[1] The court notes that plaintiff has not called into question the solvency of defendant or the sufficiency of its reserves.

Subdivision and the bankruptcy case was filed to give it "breathing room" to sell its remaining assets in an orderly fashion and distribute the proceeds to its creditors. The developer subsequently filed a motion to sell the remaining real property which it owned in the Grey Rock Subdivision, which was primarily lots in Phase III and approximately 1,000 acres designated for a nature preserve. On January 16, 2009, defendant herein filed a conditional objection in which it asked the bankruptcy court to condition the sale of the developer's remaining property in Grey Rock upon the assumption by the successful bidder of certain obligations, which would have included the developer's obligation to construct the infrastructure improvements at the various developments. On March 20, 2009, the Bankruptcy Court overruled this objection and held that the purchasers were not "assuming obligations, if any, with regard to surety bonds issued by Bond Safeguard to Rutherford County to guarantee completion of the roads and improvements to Phases 1 and 2 of the Grey Rock Subdivision." See plaintiff's Exhibit 8 (08-10159 , Docket # 452).

The court has also considered certain matters outside the pleadings as well as determinations in related cases, to wit, the exhibits submitted by plaintiff in response to the defendant's first Motion to Dismiss (#8).[2] On May 6, 2009, the parties,

---

[2] See Rule 12(b)(1) standard, infra, which allows matters outside the pleadings to be considered when subject matter jurisdiction is called into question. The exhibits submitted by plaintiff are clearly relevant to the jurisdictional issue raised by defendant.

excluding the community association, entered into a letter agreement whereby defendant agreed to provide a formal response to plaintiff's demand on the Bonds by no later than May 31, 2009. Plaintiff's Exhibit 10. On June 3, 2009, defendant sent plaintiff a four-page letter in which it asserted multiple alleged defenses which it contended relieved it from honoring its obligations under the subject bonds. See Plaintiff's Exhibit 12. In relevant part, defendant refused to complete the infrastructure improvements or to pay over the face amount of the bonds, stating:

> Succinctly, spending millions of dollars to build roads for a subdivision that would have no other improvements and that would have a very low likelihood of ever being habitable, appears to make little sense. Bond Safeguard has not changed its position [i.e. refusal to comply with its obligations under the Bonds].

Id. Plaintiff has asserted the following causes of action:

(1)     First Claim for Relief: Breach of Contract / Action to Recover on a Bond - First Bond;

(2)     Second Claim for Relief: Breach of Contract / Action to Recover on a Bond - Second Bond;

(3)     Third Claim for Relief: Breach of Contract / Action to Recover on a Bond - Third Bond;

(4)     Fourth Claim for Relief: Breach of Contract / Action to Recover on a Bond - Fourth Bond;

(5)     Fifth Claim for Relief: Breach of Contract / Action to Recover on a Bond - Fifth Bond;

(6)     Sixth Claim for Relief: Breach of Contract / Action to Recover on a

Bond - Sixth Bond; and

(7)     Seventh Claim for Relief: Breach of Contract / Action to Recover on a
        Bond - Seventh Bond.

## II.     The Community Association Intervenes

In moving to intervene, the community association earlier represented to this

court, as follows:

> The GreyRock Planned Community will be significantly and
> permanently impacted by the outcome of the incident litigation, and
> Movant seeks to intervene in the incident action to represent the interests
> of the four-hundred fifty-nine (459) GreyRock Planned Community lot
> owners who are mandatory members of the Association.

Motion to Intervene (#11), at ¶ 4. In recommending that it be allowed to intervene, the

undersigned relied heavily on the community association's representations concerning

their *adversity* of interest with Rutherford County, including their argument that the

county was not obligated to earmark such bond money, if it is recovered herein, for

actual infrastructure improvements.  The community association  included in its

proposed complaint in intervention a tenth cause of action for declaratory relief, which

the community association described in its brief in support of intervention:

> without Intervenor-Plaintiff's claim for declaratory judgment, there
> would be no decision by the court regarding the responsibility of
> Plaintiff to use these funds for GreyRock Planned Community
> infrastructure. If this were the case, Plaintiff could conceivably use these
> funds for any number of purposes, and would not be required to use the
> Bonds for developing GreyRock Planned Community infrastructure, as
> they were intended.

Memorandum in Support (#12), at 9. Finding this claim to support the required adversity of interest, the undersigned recommended to the district court that such party be allowed to intervene.

In accordance with 28, United States Code, Section 636, the district court conducted a *de novo* review of the recommendation of the undersigned. The district court accepted the recommendation of the undersigned, specifically finding that "the Association had made the required 'minimal' showing of adversity to justify its intervention in this case." Order (#26), at p. 9. The district court Ordered, however, that the parties were to provide additional briefing on the issue of subject-matter jurisdiction if, in fact, the community association actually "asserts a claim for declaratory judgment against all parties in this action." Id., at p. 11. Rather than assert its proposed tenth cause of action against Rutherford County (and subject itself to possible dismissal for lack of diversity), the community association simply did not include the cause of action against Rutherford County, the inclusion of which in the proposed claims was the "minimal basis" of adversity for recommending that such party be allowed to intervene.

Without such claim being present, the adversity of interest necessary under current case law for such party to intervene is no longer present. As exemplified in defendant's motion to dismiss, the only claims asserted by the intervenor are claims

against the bonding company based on contracts to which the community association was a stranger and is not a beneficiary. In addition to dismissing the community association for the reasons argued by defendant in the instant Motion to Dismiss, the undersigned must recommend that the community association be dismissed as its Amended Complaint fails to contain the promised claim upon which this court found minimal adversity of interest.

## III. Defendant's Motion to Dismiss the Amended Complaint of the Intervenor

Defendant has timely moved to dismiss the Amended Complaint of the Intervenor(#36) under Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, contending that this court lacks subject matter jurisdiction over the claims and that the community association has failed to state any cause of action against it. The undersigned agrees.

### A. Rule 12(b)(1): Applicable Standard

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a

district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69.  Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case.  United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

**B.     Rule 12(b)(6)**

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiffs could prove no set of facts which would support their claim and entitle them to relief. Neitzke v. Williams, 490 U.S. 319 (1989);  Conley v. Gibson, 355 U.S. 41 (1957).  This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that  the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival."   Id., at 563.  The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege facts in their complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, plaintiffs must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Ashcroft, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint fall short of the plausibility standard where plaintiffs plead "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

As reflected above in the discussion of the allegations of the Amended Complaint herein, the court has accepted as true all of the factual allegations contained in the Complaint, and, as well, has identified "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft, supra, at 1950. As reflected below, the court has assumed the veracity of any well-pleaded factual allegations "and [will] then determine whether they plausibly give rise to an entitlement to relief." Id. (alteration added).

## IV.    Discussion

The community association asserts in its Amended Complaint(#36) nine causes of action against defendant: seven for Breach of Contract by a third-party beneficiary;

one for unfair and deceptive trade practices; and one for fraud.  <u>See</u> Amended Complaint.  As to the Rule 12(b)(1) motion, defendant contends that this court lacks subject matter jurisdiction over these claims because the community association lacks standing to sue on behalf of its members and because it lacks standing to sue on its own behalf for the type of claims alleged in the Amended Complaint.  As to the Rule 12(b)(6) motion, defendant contends that the community association is not a third-party beneficiary to the contracts for which it has asserted breach of contract claims and fails to state claims upon which relief may be granted in its eighth and ninth causes of action for unfair trade practices and fraud, as these claims merely arise from a contractual dispute and do not give rise to tort remedies under North Carolina law.  For the reasons that follow, the court agrees and will recommend that all claims asserted by the community association be dismissed.

### A.    Subject Matter Jurisdiction

The court has first considered whether it has jurisdiction over the subject matter of these claims, to wit, whether the association has standing to bring these claims either on behalf of its membership or on its own behalf.

"Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." Street v. Smart Corp., 157 N.C.App. 303, 305 (2003).

A lack of standing may be challenged by motion to dismiss for failure to state a claim upon which relief may be granted. Necessarily, Rule

> 12(b)(6) 'generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery.'

Energy Investors Fund, L.P. v. Metric Constructors, Inc., 351 N.C. 331, 337 (2000)

(citations omitted). The burden of sufficiently alleging and showing standing to sue

is on the proponent of the is court's jurisdiction, the community association. Coker v.

DaimlerChrysler Corp., 172 N.C.App. 386, 391 (2005).

### 1. Standing to Sue on Behalf of Its Members

#### a. Standing of a North Carolina Homeowners' Association

The community association brings its claims, in part, on behalf of its

membership, which appears to consist of lot owners in the Greyrock community.

> [A]n organizational plaintiff may establish "associational standing" to bring an action in federal court "on behalf of its members when: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir.2002).

White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005). In North

Carolina, however, a homeowner's association lacks standing to bring an action on

behalf of its members. Creek Pointe Homeowners' Ass'n, Inc. v. Kremer, 146

N.C.App.159 (2001) (holding that homeowners' association did not have standing to

sue on behalf of its members, but did have standing to sue for its own alleged

injuries). The origin of such prohibition is found in the statutory authority underlying the formation of homeowners' associations such as the intervenor -plaintiff herein. Chapter 47F of the North Carolina General Statues, the "North Carolina Planned Community Act," does not grant homeowners' associations standing to sue on behalf of its members. <u>Creek Pointe</u>, 146 N.C.App. at 164. As a matter of law, the community association lacks standing to sue on behalf of its members.

### b. Standing of a North Carolina Non-Profit Association

Even if <u>Creek Pointe</u> and Chapter 47F had no application, the community association would still lack standing to sue on behalf of its members inasmuch as a North Carolina non-profit association must, in order to have such standing, show that (1) its members would otherwise have standing to sue on their own; (2) the interests the nonprofit association seeks to protect are germane to its purposes; (3) the claim asserted and relief requested do not require participation of individual members in the lawsuit. N.C. Gen. Stat. § 59B-8(b). The community association does not allege or assert such standing in its Amended Complaint, but does allege that its individual members have been "injured and continue to be injured." Amended Complaint, at ¶ 64. Such allegation is insufficient under Chapter 59B-8(b).

### c. Standing as to the Claims Asserted

### (i) Breach of Contract Claims

In breach of contract actions, associations that are seeking damages on behalf of their members generally do not have standing to sue. <u>River Birch Associates v. City of Raleigh</u>, 326 N.C. 100, 131 (1990). Among other reasons, associations do not have standing to bring individual claims because the damages may vary from member to member. <u>Id.</u> In this action, the community association is only seeking damages, therefore, it lacks standing to sue on behalf of its members as "damages claims [are] not common to the entire membership, nor shared by all in equal degrees." <u>Id.</u>

### (ii) Unfair and Deceptive Trade Practices Claim

The remedy the community association seeks under its Unfair and Deceptive Trade Practices claim is money damages. For the reasons discussed above, such claim is subject to dismissal under Rule 12(b)(1) for the same reasons as its contract claims are subject to dismissal. In addition, the North Carolina Supreme Court held in <u>River Birch</u>, <u>supra</u>, that a homeowners' association lacks standing to sue on behalf of its members for unfair and deceptive trade practices. <u>Id.</u>, at 130.

### (iii) Fraud Claims

Likewise, the <u>River Birch</u> Court held that the homeowners' association did not have standing to sue for fraud because by electing the damages remedy, the homeowners' association would deprive its members of their right to seek an alternative remedy. <u>Id.</u>, at 131.

### d. Summary as to Standing to Sue on Behalf of its Members

Review of the Amended Complaint as well as current case reveals that the community association lacks standing to sue on behalf of its members. The undersigned will, therefore, recommend that defendant's Motion to Dismiss the Amended Complaint be granted insofar as the community association has attempted to sue on behalf of its membership as the community association lacks standing to so proceed.

### 2. Standing to Sue on its Own Behalf

Review of the Amended Complaint reveals that the community association may also be attempting to bring suit against defendant on its own behalf. The United States Supreme Court has long held that there is

> no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.

Warth v. Seldin, 422 U.S. 490, 511 (1975). This ability to sue on its own behalf does not, however, end the standing inquiry. As the Court later held,

> our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" . . . . Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant,

and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)(citations and footnote omitted; brackets in the original). See also Neuse River Found., Inc. v. Smithfield Foods, Inc., 155 N.C.App. 110, 114 (2002).

This analysis pivots on the first element, which asks whether the associational complainant has alleged an injury in fact. Coker, supra, at 391. An injury in fact is the "invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical...." Neuse River Found., 155 N.C.App. at 114 (citation and corresponding quotation marks omitted). The harm foreseen by the community association, at least as to defendant, is purely conjectural, as the community association stated in support of seeking intervention:

> If Intervenor-Plaintiff is excluded from taking part in this action, and the litigation of this matter ultimately determines that Bond Safeguard is not bound under these Bonds, Intervenor-Plaintiff could be barred by collateral estoppel from proceeding in a separate action on the claims for which it seeks intervention in this matter.

Memorandum in Support of intervention, at pp. 8 and 9. The harm foreseen by the community association is dependent on an event that may or may occur, which is a determination that defendant is not bond to pay under the bonds. As shown below in the context of Rule 12(b)(6), the community association has no plausible cause of

action on the bonds as it cannot claim status as a third-party beneficiary under a bond of surety; thus, its projection of being barred from making claims against this defendant on the bonds is not only conjectural, it is simply impossible.

### 3.    Conclusion as to Standing

Just as Article III's requirement of a case and controversy insures that the court decides real issues of consequence, <u>Richmond Tenants Org., Inc. v. Kemp</u>, 956 F.2d 1300 (4th Cir. 1992),  the requirement of standing insures that the court has before it parties with vested and cognizable interests in the outcome of the proceeding, to wit, parties with a stake in the case.  <u>American Woodland Indus., Inc. v. Tolson</u>, 155 N.C.App. 624, 626 (2002).  As will be discussed below, the community association had no part in the county's requirement of bonds and has no legally cognizable interest in whether they are paid or not paid.  For the reasons discussed above, the undersigned must respectfully recommend that the community association's Amended Complaint be dismissed for want of subject matter jurisdiction.

### B.    Failure to State a Claim

### 1.    Breach of Contract Claims

The community association alleges that defendant has breached the bond contracts by neither finishing the improvements nor paying over the bond amount to the plaintiff.  The community association contends that it is a third-party beneficiary

to such bonds.  There is, however, no authority that supports such position.

> To establish a claim based on the third party beneficiary contract doctrine, a complaint's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit.

United Leasing Corp. v. Miller, 45 N.C.App. 400, 406 (1980).  There is no contention but that the community association has made sufficient allegations to satisfy the first two elements.  At issue are whether there are sufficient allegations that the bonds were entered into for the community association's direct, and not incidental, benefit.  Id.

In determining this third element, the question is whether both the county and the defendant intended to confer an enforceable benefit on the community association when they entered into the bonds.  Raritan River Steel Co. v. Cherry, Bekaert & Holland, 329 N.C. 646, 652 (1991).  The Chief Judge of this district explained such concept, as follows:

> It is well-settled North Carolina recognizes the right of a third-party beneficiary to sue for breach of a contract executed for his benefit. *Vogel v. Reed Supply Co.*, 277 N.C. 119, 177 S.E.2d 273 (1970). The most significant factor as to the rights of a third-party beneficiary is that both contracting parties intended that a third party should receive a benefit that might be enforced in the courts. It is not enough that only one of the parties to the contract and the third party intended that the third party should be a beneficiary. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 651, 407 S.E.2d 178, 181 (1991) (*citing Vogel*, 277 N.C. at 128, 177 S.E.2d 273). While the promisee's

intent is the primary intent which the Court must examine, the intent of both the parties must be considered. **Nor is it sufficient that the contract does benefit a party if in fact it was not intended for that party's benefit**. *Raritan*, 329 N.C. 646, 651, 407 S.E.2d 178. The parties' intentions are discerned from the "circumstances surrounding the transaction as well as the actual language of the contract," which must be "construed strictly against the party seeking enforcement." *Chemical Realty Corp. v. Home Fed. Savings & Loan*, 84 N.C.App. 27, 34, 351 S.E.2d 786 (1987)). In examining the circumstances surrounding the transaction, the North Carolina Supreme Court in *Raritan* considered . . . the failure to designate in the contract a third party as an intended beneficiary . . . . 329 N.C. at 653-54, 407 S.E.2d 178. However, the court emphasized that the entire record, not any single factor, was dispositive as to the parties' intention. Id. at 654, 407 S.E.2d 178.

Blis Day Spa, LLC v. Hartford Ins. Group, 427 F.Supp.2d 621, 637 (W.D.N.C. 2006)(emphasis added).

Clearly, the lot owners and the community association stand to benefit from the bonds, as it stands to reason that the lots the owners bought would be worth more with the promised improvements. Likewise, since it appears that the community association would own the roads and other common-area infrastructure, it also stands to reason that the community association would benefit as the valued of improved roads is substantially greater than unimproved roads. As the district court pointed out, however, in Blis Day Spa, whether a party stands to benefit is not the appropriate inquiry. Instead, this court must ask whether such party was an intended beneficiary as opposed to an incidental beneficiary. Id.

Review of the face of the bonds does not reveal that the parties to such bonds

intended that the community association or its members would be direct beneficiaries of the bonds. There are only three parties listed on the bonds: defendant, as surety; LR Buffalo Creek, as principal; and plaintiff, as obligee or third-party beneficiary. A surety bond is a third-party beneficiary contract. <u>RGK, Inc. v. U.S. Fidelity & Guaranty Co.</u>, 292 N.C. 668, 688 (1977)(dealing with statutory bonds, not common law bonds). While it certainly would have been possible for plaintiff to require the naming of the community association as a co-beneficiary inasmuch as such entity was then existing, it did not do so and there is absolutely no indication in any of the bonds that any party intended the community association or its members to be beneficiaries of the bonds. Indeed, failing to name a private entity or entities as co-beneficiaries makes common sense: the bond was given to insure the county, not the lot owners or the homeowners' association, that the county, which had to approve the development plan, would not be stuck with an unfinished development. Had the parties named or intended to name such private entities as co-beneficiaries, they would have subjected the bond to possibly conflicting claims. Perhaps most telling is the rationale alleged by plaintiff in its Complaint:

> 6. Around 2004, LR Buffalo submitted a proposed subdivision plat for the Grey Rock Subdivision to Rutherford County for approval. The subdivision plat included the installation of infrastructure in the development, including roads, electrical service, telephone lines, and water service lines.

7. In order to gain final approval for the subdivision plat and commence the sale of lots in the Grey Rock Subdivision, LR Buffalo was required to either (a) complete the infrastructure; or (b) obtain subdivision bonds to ensure that the infrastructure would be timely completed.

\* \* \*

20. The Last Agreement provided "[t]hat in the event that these deadlines are missed, then the Rutherford County Board of Commissioners shall have the option, **in its sole discretion**, to call the surety bonds for all sections for which construction is not completed regardless of whether the deadline has passed for that particular section."

Complaint, at ¶¶ 6-7 & 18. Had the county agreed to make the community association or its members co-beneficiaries, it certainly would have impacted the county's ability to regulate the permitted development. Further, as pointed out by plaintiff in its Complaint, it retained sole discretion on when to call the bonds. Not only is there no intent to make the community association a beneficiary on the face of the bonds, there is absolutely no intent evinced in the surrounding and subsequent agreements entered into by plaintiff and defendant. In Revels v. Miss America Org., 182 N.C.App. 334 (2007), the court held that although plaintiff stood to benefit from the franchise agreement between a state pageant organization and the national pageant organization, she was not "designated as a beneficiary under the franchise agreement and there was absolutely no evidence that the franchisee agreement was executed for her direct benefit." Id., at 336. The community association, therefore, has not and cannot allege sufficient facts that would be plausible on their face. Twombly, supra.

The undersigned will, therefore, recommend that defendant's motion be allowed and that plaintiffs' first seven causes of action be dismissed in accordance with Rule 12(b)(6).

## 2.     Unfair and Deceptive Trade Practices

In its eighth cause of action, the community association asserts a claim against defendant for Unfair and Deceptive Trade Practices, alleging that, among other things, "... Defendant Bond Safeguard has unjustifiably and unreasonably failed to perform or pay under the Bonds ...."  Amended Complaint, at ¶ 130(a).

Under Chapter 75-1-1 of the North Carolina General Statutes, a trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980). A cause of action for unfair and deceptive trade practices under Section 75-1-1 can be a distinct cause of action from breach of contract claim. Branch Banking and Trust Co. v. Thompson, 107 N.C.App. 53, 62 (1992).  To do so, however, plaintiff must show "substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." Id. It is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." Broussard v. Meineke Discount

Muffler Shops, 155 F.3d 331, 347 (4th Cir. 1998)(citation omitted).

In this case, as the community association concedes in the very language of its UDTPA claim, that such claim derives from the defendant's "failure to pay or perform under the bonds . . . ."Amended Complaint, at ¶ 130(a).  As such, the community association has failed to state a cause of action under the UDTPA.  The only way such contract claim could give rise to a UDTPA claim is if the community association alleged that defendant never intended to fulfill its contractual obligations, which it does not allege. Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch, 80 F.3d 895, 903 (4th Cir. 1996) ("[A] broken promise is unfair or deceptive only if the promisor had no intent to perform when he made the promise.")  The possibility that defendant can *no longer* satisfy its obligation will not suffice as the pivotal moment is when the obligation was undertaken.  Jones v. Capitol Broad. Co., Inc., 128 N.C.App. 271, 276 (1998).

The community association also alleges that defendant violated the UDTPA by practicing unfair claim settlement practices in violation of Chapter 58-63-15(11) of the North Carolina General Statutes. This is simply an implausible assertion as no violation of the subsection itself constitutes a cause of action.  Id.

As no substantial aggravating circumstances are alleged, this claim fails and the undersigned will recommend that it be dismissed in accordance with Rule 12(b)(6).

### 3. Fraud

In its ninth cause of action, the community association asserts a claim of fraud against the defendant. The essential elements of a claim of fraud by misrepresentation are: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. Jolly v. Acad. Collection Serv., 400 F.Supp.2d 851 (M.D.N.C. 2005). To satisfy the specificity requirements of Rule 9(b), it is the community association's obligation to plead the time, place, and contents of the false representations, as well as the identity of the person making the representation and what such person obtained thereby.

Review of the Amended Complaint reveals that the community association has made no allegation of a misrepresentation made to it by defendant, plausible or otherwise. Instead, the community association alleges that defendant "misrepresented to Rutherford County and LR Buffalo Creek." Amended Complaint at ¶¶ 135 137. This is not sufficient to satisfy Rule 9(b) or Rule 12(b)(6), and the undersigned will recommend that this clam be dismissed.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

defendant's Motion to Dismiss Amended Complaint of Intervenor-Plaintiff (#40) be **ALLOWED**, and that the Amended Complaint be **DISMISSED** in its entirety under Rule 12(b)(1) for want of subject-matter jurisdiction and, alternatively, under Rule 12(b)(6) for failure to state a cognizable claim.

**IT IS FURTHER RECOMMENDED** that Greyrock Community Association, Inc., be **DISMISSED** as an intervenor-plaintiff as the Amended Complaint fails to reflect minimal adversity of interest with plaintiff required for intervention.

### Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: September 20, 2010

Dennis L. Howell
United States Magistrate Judge