IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:09cv292

| | | |
|---|---|---|
| RUTHERFORD COUNTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| GREYROCK COMMUNITY | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF DECISION** |
| | ) | **AND ORDER** |
| BOND SAFEGUARD | ) | |
| INSURANCE CO., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss the Amended Complaint of the Intervenor-Plaintiff. [Doc. 40].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider the motion to dismiss and to submit a recommendation for its disposition. On September 20, 2010, the Magistrate Judge entered a Memorandum and Recommendation in which he recommended that the Defendant's motion be granted. [Doc. 44]. The

Intervenor-Plaintiff timely filed objections [Doc. 45], to which the Defendant has responded [Doc. 46].

I.  **PROCEDURAL & FACTUAL BACKGROUND**

The Plaintiff Rutherford County initiated this action on July 31, 2009, seeking to recover on seven surety performance bonds ("bonds") related to a failed residential development in Rutherford County known as "GreyRock at Lake Lure" ("Grey Rock"). [Doc. 1 at ¶4]. Rutherford County is the named obligee under the bonds; Grey Rock's developer, LR Buffalo Creek, LLC ("LR Buffalo Creek") is the promisee; and the Defendant Bond Safeguard Insurance Company ("Bond Safeguard") is the named surety. The face value of the bonds is approximately $26 million. [Id.].

In its Complaint, Rutherford County alleges that LR Buffalo Creek failed to perform as required by the written Performance Guarantee Agreements, and that much of the development, including certain agreed-to improvements such as roads, remains undeveloped. [Id.]. Rutherford County seeks to have Bond Safeguard honor its bonds by either completing the development or paying to Rutherford County the principal amount of the bonds. [Id.].

On September 24, 2009, the GreyRock Community Association, Inc. ("Association") filed a motion seeking to intervene in this matter as of right in order to represent the interests of the 459 lot owners who are mandatory members of the Association. [Doc. 11 at 2-3]. In a Memorandum and Recommendation entered December 3, 2009, the Magistrate Judge recommended that the Association's motion be granted. In recommending that the Association be allowed to intervene, the Magistrate Judge relied heavily on the Association's representations concerning its adversity of interest with Rutherford County and particularly the Association's stated intent to assert a claim for declaratory relief, a claim without which, the Association contended, "there would be no decision by the court regarding the responsibility of [Rutherford County] to use these funds for GreyRock Planned Community infrastructure." [Doc. 23 at 14]. The Court, upon conducting a *de novo* review, accepted the recommendation of the Magistrate Judge, specifically finding that based on its intent to assert a declaratory judgment claim, "the Association had made the required 'minimal' showing of adversity to justify its intervention in this case." [Doc. 26 at 9]. When the Association's Intervenor Complaint was filed, however, the claim for declaratory relief was not asserted. [<u>See</u> Doc. 27].

Bond Safeguard moved to dismiss the Intervenor Complaint on June 23, 2010. [Doc. 33]. In response, the Association filed an Amended Intervenor Complaint. [Doc. 36]. As the filing of the Amended Complaint rendered the pending motion to dismiss moot, that motion was denied. [Doc. 38]. Bond Safeguard then moved to dismiss the Amended Complaint [Doc. 40], which the Association opposed [Doc. 42].

On September 20, 2010, the Magistrate Judge entered his Memorandum and Recommendation regarding this second motion to dismiss. In it, the Magistrate Judge first noted that without the assertion of the proposed declaratory judgment claim, the adversity of interest required to justify the Association's intervention in the case was no longer present, and he therefore recommended that the Association be dismissed as an intervening party. [Doc. 44 at 9-10]. The Magistrate further concluded that the Association has no standing to bring the asserted claims on behalf of its membership or on its own behalf, and therefore, the Court lacks subject matter jurisdiction over the Association's claims. [Id. at 15-21]. Additionally, the Magistrate Judge concluded that the Association failed to state a cognizable claim for breach of contract under a third-party beneficiary theory and therefore the seven breach of contract claims asserted in the Amended Complaint should be dismissed. [Id. at 21-26].

With respect to the Association's claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, et seq. ("Chapter 75"), the Magistrate Judge concluded that the Association had failed to allege the requisite substantial aggravating circumstances and therefore recommended that this claim be dismissed. [Id. at 26-27]. Finally, with respect to the Association's fraud claim, the Magistrate Judge concluded that the Association had failed to make sufficient allegations of a misrepresentation to state a cognizable claim. [Id. at 28].

The Association objects to the Magistrate Judge's Recommendation, arguing that dismissal of the Amended Complaint is improper under Rule 24 of the Federal Rules of Civil Procedure. The Association further argues that it has standing sufficient to establish subject matter jurisdiction, and that it has set forth allegations sufficient to state claims for breach of contract as a third party beneficiary and for violations of Chapter 75. [Doc. 45].[1]

---

[1] The Association makes no objection with respect to the Magistrate Judge's recommendation that its fraud claim be dismissed.

## II. STANDARD OF REVIEW

### A. Standard of Review Applicable to Objections to Magistrate Judge's Proposed Findings and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

### B. Rule 12(b)(1) Standard of Review

Federal district courts are courts of limited jurisdiction. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). "Thus, when

6

a district court lacks subject matter jurisdiction over an action, the action must be dismissed." Id. The lack of subject matter jurisdiction is an issue that may be raised at any time. See Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008); see also Fed. R. Civ. P. 12(h)(3).

When subject matter jurisdiction is challenged in fact, the plaintiff has the burden of demonstrating the existence of subject matter jurisdiction by a preponderance of the evidence. Vuyyuru, 555 F.3d at 347-48 (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "If the jurisdictional facts are so intertwined with the facts upon which the ultimate issues on the merits must be resolved, the entire factual dispute is appropriately resolved only by a proceeding on the merits." Vuyyuru, 555 F.3d at 348 (internal citations and quotation marks omitted). Where, as here, the jurisdictional facts are not intertwined with the facts central to the merits of the case, the Court itself may resolve the jurisdictional issue. In so doing, the Court may consider evidence beyond the allegations of the complaint without converting the motion to dismiss to one for summary judgment. Adams, 697 F.2d at 1219.

**C. Rule 12(b)(6) Standard of Review**

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949. A plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, *i.e.*, the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>
> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' –

> 'that the pleader is entitled to relief,'" as required by Rule 8. ... [E]ven though Rule 8 "marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Id. (quoting Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955 and Iqbal, 129 S.Ct. at 1950).

## III. DISCUSSION

### A. Dismissal Under Rule 24

Pursuant to Federal Rule of Civil Procedure 24(a)(2), a proposed intervenor is required to show that: "(1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (quoting Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Ass'n, 646 F.2d 117, 120 (4th Cir. 1981)). In order to be granted intervention, a party must make a "minimal" showing "that representation of his interest 'may be' inadequate." Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).

As the Magistrate Judge properly noted, the Court relied heavily on the Association's representations concerning its adversity of interest with Rutherford County and, in particular, its stated intent to assert the cause of action for declaratory relief set forth in the Association's proposed complaint in concluding that the Association had established the "minimal" basis of adversity necessary to justify intervention. Because the Association failed to include this proposed cause of action in its complaint, however, the Magistrate Judge reasoned that the adversity of interest required for the Association to intervene is no longer present in this case, and he therefore recommended the dismissal of the Association as an intervening party. [Doc. 44 at 8-9].

The Association objects to the Magistrate Judge's recommendation, arguing that despite the absence of the declaratory judgment claim, adversity of interest still exists in that it remains possible that Rutherford County may compromise its claims and either take a lesser amount on the bonds or allow completion of the infrastructure in a less expensive manner, thereby resulting in greater maintenance costs for the Association. This argument is without merit. While the Court did note the possibility of such events occurring, this concern was not, by itself, found to be sufficient to give the Association the right to intervene. The possibility that the

infrastructure may be completed in a less expensive manner that would result in greater maintenance costs for the Association is purely speculative and not supported by anything in the record.  As such, the mere possibility of this occurrence, without more, fails to establish the requisite level of adversity to justify the Association's intervention.

The Association further argues that Rule 24 of the Federal Rules of Civil Procedure does not grant the Court authority to revoke an Order allowing intervention after intervention as of right has been granted.  An order allowing intervention, however, is not a final order, see <u>Alsea Valley Alliance v. Dep't of Commerce</u>, 358 F.3d 1181, 1187 (9th Cir. 2004), and therefore may be revised or corrected at any time prior to the entry of final judgment.  Here, the Association's motion to intervene was granted based on the contents of its proposed complaint, and particularly, the proposed claim for declaratory judgment.  The subsequent decision to abandon the very claim on which the Court relied to find the requisite adversity of interest justifies the Court's review and revision of its prior Order allowing intervention in this case.

For these reasons, the Court accepts the Magistrate Judge's recommendation that the Association should be dismissed as an intervening party due to the lack of an adversity in interest.

## B. Standing

Standing is an essential component of subject matter jurisdiction. Marshall v. Meadows, 105 F.3d 904, 906 (4th Cir. 1997). As the party asserting the existence of jurisdiction, the Association has the burden of proving the elements of standing. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006).

To establish standing, the Association must establish (1) that it "suffered an injury in fact," that is, "an invasion of a legally protected interest which is (a) concrete and particularized, meaning that the injury must affect the plaintiff in a personal and individual way, and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct complained of," that is, "the injury has to be fairly traceable to the challenged action of the defendant"; and (3) that there is a likelihood "that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted). To be "imminent," an injury in fact "must 'proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all.'" Coker, 172 N.C. App. at 391, 617 S.E.2d at 310 (quoting Lujan, 504 U.S. at 564 n.2, 112 S.Ct.

2130). "At the pleading stage, general factual allegations of injury resulting from the defendants' conduct may suffice" to establish the element of injury in fact required for standing. Lujan, 504 U.S. at 561, 112 S.Ct. 2130.

The Magistrate Judge did not err in determining that the Association lacks standing to assert the claims on its own behalf in this case. A careful review of the Association's Amended Complaint reveals that the Association has not pled any actual or imminent injury to its own interests. At best, the Association has alleged that as a homeowner's association, it has certain statutory rights and duties, including "the right to ownership of the completed common areas and infrastructure"[2] and a duty to maintain those areas and infrastructure. [Doc. 36 at ¶63]. The Association has failed to alleged, however, any conduct on the part of Bond Safeguard that interferes with these rights and duties. The Association further alleges that as a result of Bond Safeguard's conduct, "recent lot appraisals indicate the lots are currently worth ten percent or less of the purchase prices paid by lot owners." [Doc. 36 at ¶64]. This, however, alleges no injury to the Association. Having failed to allege any actual or imminent injury, the Association lacks standing to assert claims on its own behalf in this case.

---

[2]While the Association relies on Chapter 47F of the North Carolina General Statutes in support of this assertion, nothing in Chapter 47F confers the right on a homeowner's association to require that common areas and infrastructure be *completed* prior to such association assuming ownership thereof.

The Association's attempt to assert claims on behalf of its members is similarly flawed. A homeowners' association may have standing to sue on behalf of its members when (1) its members would otherwise have standing to sue on their own; (2) the interests that the association seeks to protect are germane to its purposes; and (3) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit. Creek Pointe Homeowner's Ass'n, Inc. v. Happ, 146 N.C. App. 159, 165, 552 S.E.2d 220, 225 (2001) (citing Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). Applying this standard, the Magistrate Judge correctly noted that in actions for breach of contract or unfair and deceptive trade practices, associations seeking damages on behalf of their members generally do not have standing to sue, in part because damages vary from member to member. See River Birch Assocs. v. City of Raleigh, 326 N.C. 100, 131, 388 S.E.2d 538, 556 (1990) (citing Warth v. Seldin, 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In the present case, the Association purports to seek money damages on behalf of its members. Each member's damages, however, would vary depending on the value of each member's lot in the development. Furthermore, as the bonds at issue relate only to Phase I and Phase II of the development, Phase I and Phase II lot owners

would have different damages than those damages, if any, claimed by Phase III lot owners. As such, the damages claimed are "not common to the entire membership, nor shared by all in equal degree." River Birch, 326 N.C. at 130, 388 S.E.2d at 555 (citation omitted).

For these reasons, the Magistrate Judge correctly concluded that the Association lacks standing to sue on behalf of its members. The Association's objections on this point are therefore overruled.

**C.     Third Party Beneficiary Theory**

"To establish a claim based on the third party beneficiary contract doctrine, a complaint's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." United Leasing Corp. v. Miller, 45 N.C. App. 400, 405-06, 263 S.E.2d 313, 317 (1980). In determining this third element, the most important factor for the Court to consider is whether the parties to the contract intended to confer a benefit on the party alleging it was damaged by the breach. Raritan River Steel Co. v. Cherry, Bekaert & Holland, 329 N.C. 646, 652, 407 S.E.2d 178, 182 (1991).

The Association argues that the Magistrate Judge erred in failing to consider whether the parties to the bonds, in particular, LR Buffalo Creek,

15

intended to make the Association a beneficiary of their agreement. Contrary to the Association's argument, the Magistrate Judge appropriately considered the intent of the parties to the bonds and concluded that the Association was not an intended third-party beneficiary. As the Magistrate Judge correctly noted, Rutherford County is the only beneficiary expressly identified on the face of the bonds. Rutherford County is the only party that has the option to require performance on the part of the surety [see Performance Guarantee Agreements ¶3, Doc. 1-2 at 2, 5, 8, 12]; that is given the power of approval and release [see id. at ¶5, Doc. 1-2 at 2, 5, 8, 12]; and that has the sole option to call the bonds in the event of a default [see Third Addendum to Performance Guarantee Agreements ¶4, Doc. 1-3 at 22; Subdivision Bonds, Doc. 1-3]. Rutherford County holds such powers as a specifically identified third party beneficiary (i.e. obligee) of the bonds. There is nothing in the bonds or the Performance Guarantee Agreements that indicates an intent by the Defendant or LR Buffalo Creek to confer any such powers or rights upon any unnamed third party beneficiary - whether the Association, its members or anyone else.

The Association cites RGK, Inc. v. U.S. Fidelity & Guaranty Co., 292 N.C. 668, 235 S.E.2d 234 (1977), in arguing that surety contracts must be construed liberally in the interest of the claimed beneficiary and strictly

against the surety. The Association also cites <u>RGK</u> for the proposition that third-party beneficiaries need not be expressly named in a surety contract in order to assert third party rights. <u>RGK</u>, however, is distinguishable from the instant case. The <u>RGK</u> case involved the rights that labor and materialmen have under statutory bonds independent of the obligee. Statutory bonds often identify specific groups of potential claimants or beneficiaries beyond the obligee by categories, such as laborers and materialmen. <u>See</u> <u>id.</u> at 683, 235 S.E.2d at 243. Such is not the case, however, with common law surety bonds, such as are at issue here. Surety bonds are construed under the common law of contracts. As such, <u>RGK</u> is simply inapplicable to the present case.

   D.   **Chapter 75 Claim**

Finally, the Association objects to the Magistrate Judge's recommendation that its Chapter 75 claim be dismissed. Specifically, the Association argues that the Magistrate Judge failed to consider that the actions which constitute the basis for the Chapter 75 allegations are unfair claim settlement practices in violation of N.C. Gen. Stat. § 58-63-15(11) and thus constitute a Chapter 75 violation as a matter of law.

The Association's objection must be rejected for several reasons. First, it is well-established under North Carolina law that § 58-63-15(11)

applies only to contracts of insurance and not to surety agreements. See Henry Angelo & Sons, Inc. v. Property Dev. Corp., 63 N.C. App. 569, 573, 306 S.E.2d 162, 165 (1983); see also Cincinnati Ins. Co. v. Centech Bldg. Corp., 286 F.Supp.2d 669, 689-90 (M.D.N.C. 2003). Second, even if § 58-63-15(11) were applicable to this case, in order to allege unfair claim settlement practices under that provision, the Association must not only allege that Bond Safeguard committed or performed certain acts listed in the statute, but that it committed or performed such acts "with such frequency as to indicate a general business practice." N.C. Gen. Stat. § 58-63-15(11). The Association, however, makes no such allegation in its Amended Complaint. Third, the Association has not alleged that any actual damages were proximately caused by any of Bond Safeguard's alleged unfair or deceptive trade practices. Rather, the Association only speculates that Bond Safeguard may not have the financial reserves necessary to cover its liabilities under the bonds if a judgment is rendered against it. [See Doc. 36 at ¶131]. Given the lack of any plausible allegation that Bond Safeguard entered into the bonds without adequate resources to support the obligation, the Association cannot point to an injury that would give rise to a cause of action under Chapter 75.

## IV. CONCLUSION

For the reasons stated herein, the Court accepts the Magistrate Judge's recommendation and concludes that Greyrock Community Association, Inc. should be dismissed as an Intervenor-Plaintiff as the Amended Complaint fails to reflect the minimal adversity of interest with the Plaintiff required for intervention. The Court further concludes that the Intervenor's Amended Complaint should be dismissed in its entirety under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a cognizable claim.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that Greyrock Community Association, Inc.'s Objection to the Second Memorandum and Recommendation of Magistrate Judge Dennis L. Howell [Doc. 45] is **OVERRULED**, and the recommendation of the Magistrate Judge [Doc. 44] is **ACCEPTED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss the Amended Complaint of the Intervenor-Plaintiff [Doc. 40] is **GRANTED**, and the Amended Complaint of the Intervenor-Plaintiff is hereby **DISMISSED**.

**IT IS SO ORDERED.**

Signed: March 2, 2011

Martin Reidinger
United States District Judge